IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID KRAUSE, | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) CASE NO.: 3:23-cv-00266 |
| NELBERT KRAUSE and PLATINUM PROGRAMMING AND DIAGNOSTICS, LLC, | ) JUDGE TRAUGER |
| | ) JURY DEMAND |
| Defendants/Counter-Plaintiffs. | ) |

**NELBERT KRAUSE'S ANSWER AND COUNTERCLAIM
AGAINST DAVID KRAUSE**

COMES NOW Nelbert Krause ("Nelbert" or "Defendant"), by and through counsel who states as follows for his Answer to the Complaint for Declaratory Judgment brought by Plaintiff David Krause ("David")[1]:

1. Admitted, upon information and belief.

2. The first two paragraphs of paragraph 2 are admitted; the third paragraph is denied.

3. Denied as stated.

4. Denied.

5. Denied.

6. Paragraph 6 asserts legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in paragraph 6.

7. Paragraph 7 asserts a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in paragraph 7.

---

[1] Due to the parties having the same last name, Defendant respectfully refers to each Krause by his first name.

8. Paragraph 8 asserts a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in paragraph 8.

9. To the extent not directly admitted or denied above, Defendant expressly and wholly denies the allegations asserted in the Complaint.

## **AFFIRMATIVE DEFENSES**

Subject to and without waiving the denials and responses contained in his Answer, Nelbert asserts the following affirmative defenses directed to the Complaint. In asserting these defenses, Nelbert reasserts and realleges other allegations in his Answer and Counterclaim as if fully set forth herein. In asserting these defenses, Nelbert does not assume the burden of proof as to those issues which, pursuant to law, remain David's to prove.

1. Plaintiff's Complaint, in whole or in part, fails to state a claim for which relief can be granted.

2. David has unclean hands as he has willfully engaged in unconscionable, inequitable, immoral, and illegal acts with regard to the subject matter of his claims and those asserted in the Defendants' Counterclaims.

3. Nelbert relies upon the after-acquired evidence doctrine to deny David any relief, as Nelbert would have terminated all relations with David, immediately upon learning of his misconduct, and without committing any obligations to him, if Nelbert would have known of David's misconduct when it occurred.

4. David's requested relief is barred by equitable estoppel, as David engaged in conduct prior to and after the signing of the Document which amounted to false representations and concealment of material facts, and was calculated to convey the impression that the facts were otherwise than, and inconsistent with, those which he subsequently tries to assert, including, but

not limited to, his failure to disclose the extent of the customers, data, and equipment he had taken, his manipulation of the equipment listing documenting Platinum's equipment to be divided, and his concession to not include intellectual property rights in the Document. David, with knowledge of the real facts and while maintaining a consistent effort to conceal them, intended for Nelbert to act upon these misrepresentations, and which Nelbert did to his detriment.

5. The Document is invalid, unenforceable, void, and/or voidable because it was not formed with requisite mutual assent or consideration, and is vague, uncertain, and indefinite.

6. David is not entitled to any relief from the Document because he engaged in fraud in the inducement and fraud with his intentional misrepresentations and omissions of material facts including facts about revenue, accounts receivable, customers, intellectual property, equipment, and his plans to unfairly compete with Platinum, upon which Nelbert relied when signing the Document and his commission of the first material breach by not satisfying his obligations in the Document and stealing Platinum's property and customers.

7. Nelbert asserts the defense of mistake induced by fraud or concealment of material facts as Nelbert was influenced by David's fraud and deceit to sign the Document without knowledge of David's intent or misconduct and Nelbert would not have signed the Signed Document if David had been truthful and forthcoming such that he was aware of all relevant facts.

8. In the alternative, and without waiving any other allegations or defenses, Nelbert asserts that if the Signed Document is found to be an enforceable contract, its performance is excused by David's first material breaches and other inequitable and unlawful misconduct.

9. In the alternative, and without waiving any other allegations or defenses, Nelbert asserts that if the Signed Document is found to be an enforceable contract, he satisfied his

NSH 2622776.1

Case 3:23-cv-00266    Document 9    Filed 03/31/23    Page 3 of 20 PageID #: 54

obligations under such contract, and, as such, the accord and satisfaction defense prevent him from having any future obligations to David.

10. In the alternative, and without waiving any other allegations or defenses, Nelbert asserts that the Signed Document should be rescinded due to the allegations and defenses asserted herein, including inequitable and illegal conduct, fraud, mistake, and material breaches.

11. Nelbert has not knowingly or intentionally waived any applicable defenses and he reserves the right to assert additional affirmative defenses not stated herein, including such defenses that later become apparent. He further reserves the right to amend this Answer in light of facts or legal theories that become applicable through subsequent disclosures, discovery, procedural issues, or modification of existing statute and defenses.

12. Nelbert hereby incorporates the Counterclaim as setting forth additional allegations and defenses to David's Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Nelbert respectfully prays that the Court:

a. Deny Plaintiff's prayer for relief in its entirety;

b. Dismiss the Complaint with prejudice and enter judgment in favor of the Defendants;

c. Rescind the Signed Document, to the extent it is deemed to be a valid and enforceable contract;

d. Award the prayers in his Counterclaim; and

e. Award Nelbert such other and further relief as the Court deems equitable and just, including but not limited to attorneys' fees, costs, and expenses.

* * *

## COUNTERCLAIM

Nelbert Krause ("Nelbert" or "Counter-Plaintiff"), by and through his attorneys, hereby alleges the following counterclaims against David Krause ("David" or "Counter-Defendant"):

## PARTIES

1. Nelbert is a citizen and resident of Humble, Harris County, Texas.

2. Upon information and belief, David is a citizen and resident of Montgomery County, Tennessee.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship) and 28 U.S.C. § 1367. The amount in controversy herein exceeds $75,000. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL BACKGROUND

4. Platinum is a single member limited liability company formed in 2016 that provides automotive programming and diagnostic repairs for body shops and dealerships in the Tennessee, Kentucky, Texas and Oklahoma.

5. Specifically, Platinum provides repairs to an automobile's advance driver assistance systems ("ADAS").

6. The ADAS calibration process requires specific knowledge and training of certain technology and sensors that read the automobile's data and provide proper alignment of the ADAS.

7. On or about June 1, 2016, Platinum hired David as an independent contractor, which is the capacity he remained in until he transitioned to a full-time employee of Platinum on or around June 15, 2018.

8. In his role as Tennessee Manager, David was responsible for overseeing Platinum's operations in the Tennessee-Kentucky region.

9. In or around June 2020, Nelbert began negotiating the sale of Platinum to David.

10. Nelbert and David negotiated for approximately sixteen (16) months.

11. During the negotiations, David sought information on Platinum's assets, expenses, insurance coverage, and revenues, which he was not privy to as an employee.

12. During the negotiations, and as late as January of 2022, David sent multiple documents, prepared by himself and/or his agent(s), which listed David as having a 0% ownership interest in Platinum.

13. On or about January 1, 2022, Nelbert decided not to go through with the sale of Platinum upon learning the David had created his own business called Zero Point Calibrations LLC ("Zero Point"). During this time, Platinum discovered David had stolen money from Platinum, by using Platinum's business credit cards to assist with the launch of Zero Point and for his own personal expenses.

14. On or about February 2, 2022, Platinum terminated David's employment for breaching his non-compete agreement with Platinum.

15. During his tenure with Platinum, David was an employee and never held the role of member or partner.

16. When David represented that he was interested in buying Platinum, he knew that he would have to purchase 100% of the ownership from Nelbert, who was, is, and has always been, the sole member and 100% owner of Platinum.

17. Upon information and belief, David has never claimed to be an owner of Platinum on any tax documents.

18. David was paid as a W2 employee of Platinum from approximately June 15, 2018, through February 15, 2022. In this role, David was paid approximately $52,000 per year with a $10,000 quarterly bonus plan.

19. Nelbert, the owner and sole member of Platinum, did not receive bonuses or benefits like Platinum's employees.

20. Platinum has never claimed David as a member on any filings with any state.

21. Nelbert has always been the only member of Platinum listed on the company's tax documents.

22. Nelbert has always claimed 100% ownership of Platinum on his personal taxes.

23. Nelbert contributed 100% of the capital to Platinum.

24. Platinum paid for David's cell phone, fuel, and provided him a company vehicle; Nelbert did not receive any of these benefits.

25. David only had signatory privileges on Platinum's bank accounts and credit cards and was not a listed owner on Platinum's bank accounts or credit cards.

26. Nelbert only signed loans and title documents for equipment and trucks for Platinum.

27. All of Platinum's vehicles, equipment, and tools that were not in Platinum's name were in the name of Nelbert and never David.

28. David's Secret Development of a Competing Company & Syphoning of Platinum's Clients, Assets, Data and Employees

29. On or about June of 2021, Jeremy Dave Tyler ("Tyler"), a contractor for Platinum, began the development of a software application for Platinum to use that would combine inputs of customer and vehicle data to produce suggested resolutions to vehicle issues once a Platinum technician scanned a vehicle. Platinum paid for all development of this software application and was the owner of all elements of this software application and related intellectual property at all times.

30. Tyler developed the software application for Platinum using tools purchased by Platinum, including software, subscriptions and computers.

31. Beginning around June of 2021 through approximately February of 2022, Tyler migrated all Platinum's emails and customer data into this developing software application for Platinum.

32. From around December 2021 through January 2022, David surreptitiously directed the copying of Platinum's intellectual property, customer data, and service data to an external hard drive to be taken to his new, competing company.

33. In or around December 2021–February 2022, David, without permission, authority, or consent, changed the ownership of Platinum's intellectual property housed with a third-party developer by deleting Platinum's account, which was registered under Nelbert's name, and creating a different account registered under his own name. Once Zero Point launched, David then transferred the stolen information to Zero Point.

34. David officially opened Zero Point Calibrations, LLC, ("Zero Point") on or about January 16, 2022.

35. On or about November of 2021 through February of 2022, David directed Platinum's employees, and some of them agreed to, divert business opportunities from Platinum to the competing company he was developing.

36. On or about November of 2021 through February of 2022, David instructed, and some of Platinum's employees agreed to, attend service calls with Platinum's customers but to bill the work to the competing company he was developing instead of Platinum.

37. On or about January of 2022 through February of 2022, David solicited and induced Platinum's employees to leave Platinum and work for his company, Zero Point Calibrations, LLC.

38. In February of 2022, four (4) Platinum employees, Andrew Brooks, Brian Collins, Richard Coss, and Samuel Valentine, all left Platinum to work for Zero Point. These employees each signed individual employment agreements with Platinum, each including provisions for non-competition, non-solicitation, and non-disclosure of confidential information. These agreements are attached hereto as **Exhibit A** - Collins Agreement, **Exhibit B** - Brooks Agreement, **Exhibit C** **-** Valentine Agreement, and **Exhibit D -** Coss Agreement, and incorporated by reference.

39. None of these former employees worked in calibrations prior to employment with Platinum.

40. On or around February 3, 2022, Platinum had 8 employees (seven 7 of which were technicians) and 1 contractor working for it; David took 4 of these employees and the 1 contractor from Platinum without notice.

41. On or around January through February 2022, David intentionally interfered with Platinum's business relations by deleting and Platinum's letterhead from its customer's invoices and instead adding Zero Point's letterhead, which included Zero Point's contact information instead of Platinum's to divert Platinum's customers to Zero Point.

42. On or around January through February 2022, David also intentionally interfered with Platinum's business relations by deleting Platinum's email address from customer lists in an attempt to forward customers to Zero Point.

43. On or around January through February 2022, David further interfered with Platinum's business by changing the named owner of business property on the equipment list.

44. On or around January through February 2022, David also stole Platinum's data and confidential business information and changed the passwords to access said data and information preventing Platinum from accessing its business files.

## A. Termination of David and Disloyal Employees

45. Platinum terminated employees Brooks, Collins, Coss, and Valentine on or about February 2, and February 3, 2022, due to their breaches of their Agreements, violations of their duties of loyalty, and tortious interference with Platinum's business relations.

46. On or around February 6, 2022, David sent Nelbert his initial proposal of the terms to govern his termination from Platinum. In this document, (the "Draft Document"), David included a section for "Software and Application Development" on which he stated that "all software and application developments will remain the intellectual property of David and not be a part of Platinum Programming and Diagnostics, LLC and Nelbert Krause." A copy of the Draft Document is attached hereto as **Exhibit E.**

47. Upon information and belief, on or about February 6, 2022, David intentionally manipulated the equipment and inventory list that he requested, and which Nelbert understood, to reflect Platinum's equipment to be divided between Nelbert and David in the signed Document with the intent to misrepresent the actual equipment for his benefit and Nelbert's detriment.

48. Upon information and belief, on or about February 6, 2022, David used fraudulent serial numbers to manipulate the equipment list of equipment to be divided between Nelbert and David in the signed Document with the intent to misrepresent the actual equipment for his benefit and Nelbert's detriment.

49. On or about February 7, 2022, Nelbert informed David that he would not agree to the terms as proposed in the Draft Document because it included a division of Platinum's personal property.

50. In response to Nelbert's reservation, David affirmatively stated that he would "remove the intellectual property."

51. On or about February 7, 2022, and in response to Nelbert's request, David provided Nelbert an amended document that removed the "Software and Application Development" section and any reference to intellectual property.

52. On or around February 7, 2022, David and Nelbert entered into the document attached as **Exhibit F** (the "Signed Document").

53. The Signed Document does not reference or authorize the distribution of Platinum's intellectual property.

54. Nelbert never agreed to, relinquish any ownership nor control of Platinum's intellectual property.

B. **David's Post-Separation Misconduct**

55. David failed to satisfy his obligations under the Signed Document.

56. On or about February 10, 2022, David provided passwords and emails to some of Platinum's accounts, only to subsequently change the passwords to prevent Platinum's access.

57. On or about February 18, 2022, Platinum learned from its existing customers that Platinum's former employees were hired to work for Zero Point and were actively soliciting work from Platinum's existing customers.

58. After David's termination from Platinum, David, directly or indirectly, accessed Platinum's electronic communications where Platinum's information was kept, and altered and deleted Platinum's stored communications.

59. After investigation, Platinum learned that on or about August 8, 2022, David, directly or indirectly, accessed Platinum's intellectual property by unlawfully and without permission, assessing a Platinum email account and cloud-based server in an attempt to alter, copy, steal, and delete Platinum's intellectual property, including but not limited to the development notes, documents, and information Tyler saved in his Google drive.

60. Similarly, on or about November 13 and 14, 2022, David directly or indirectly accessed Platinum's intellectual property by unlawfully and without permission, assessing Platinum email account and cloud-based server that is serviced and altered, copied, stole, and deleted Platinum's intellectual property.

61. On or about November 13 and 14, 2022, David, directly or indirectly, unlawfully accessed Platinum's intellectual property on Tyler's Google Drive and altered, copied, and misappropriated Platinum's intellectual property including, but not limited to, development notes, documents, and information, application password backups, GCP, API keys, and service account credentials.

62. After David's employment with Platinum, he defamed and misrepresented Nelbert's character to Platinum's employees, falsely and maliciously portraying Nelbert in a false light to induce Platinum's employees to work for Zero Point.

63. After David's employment with Platinum, he defamed and misrepresented Nelbert's character to Platinum's existing and prospective customers, falsely and maliciously portraying Nelbert in a false light to induce Platinum's existing and prospective customers to do business with Zero Point.

64. On or around November 2021 through March 2022, Zero Point directly competed with Platinum, taking multiple of Platinum's existing customers and directly interfering with its business relations with prospective customers.

65. Platinum estimates to have lost over $500,000 in lost sales to Zero Point from existing and potential customers.

66. David's misconduct, as alleged herein, was done maliciously, intentionally, fraudulent, or at least recklessly, entitling Nelbert to punitive damages.

## **COUNT 1 – DECLARATORY JUDGMENT**

67. Nelbert reasserts and realleges the allegations elsewhere as if fully set forth herein.

68. Nelbert asserts this Count pursuant to 28 U.S.C. § 2201, *et seq.*

69. On or about February 7, 2022, Nelbert and David executed the Signed Document.

70. Nelbert asserts the Signed Document is not an enforceable contract, or, if it is, Nelbert and Platinum are not obligated to perform due to David's and/or Zero Point's fraudulent concealment, misrepresentations, lack of mutual assent, uncertainty in terms, and lack of consideration.

71. In contrast, David seeks a determination that the Signed Document is enforceable.

72. An actual, substantial controversy exists as to the enforceability of the Signed Document, the determination of which impacts the rights, obligations, and damages of the parties.

73. A judicial determination and a declaration of the rights and obligations of the parties are necessary and appropriate at this time as there is currently actual harm and a significant possibility of future harm regarding the rights of each party, which relate to active businesses and overlapping customers and potential customers.

74. Nelbert seeks an Order to determine and declare that the Document is not enforceable agreement or contract, and thus, he owes no duty or obligation to David.

75. Nelbert specifically seeks an Order to determine and declare that the Document does not encompass any division of intellectual property rights.

## COUNT 2: FRAUD

76. Nelbert reasserts and realleges the allegations elsewhere as if fully set forth herein.

77. At the time of signing the Signed Document, Nelbert did not know the extent, in duration, number, or severity, of the tortious and breaching conduct David did himself, nor that he had induced others to do for him.

78. At the time of signing the Signed Document, David knew of his previous conduct in breaching his duties to Platinum, diverting business opportunities, inducing employees to do work for a competing company while working for Platinum, but did not disclose those facts to Nelbert before signing the Signed Document.

79. At the time of signing the Signed Document, David knew he misrepresented the equipment list and inventory incorporated in the Agreement.

80. At the time of signing the Signed Document, David misrepresented previous conduct and future intentions through intentional misrepresentation and omission of information.

81. Nelbert is still learning about conduct David engaged in prior to February 7, 2022, which Nelbert did not know, and David did not disclose, when Nelbert executed the Signed Document, including, but not limited to:

    a. Scheduling jobs with Platinum customers but billing them to Zero Point;

    b. Changing the invoices on jobs completed by Platinum to bear the logo and contact information of Zero Point;

    c. Telling customers false statements about Nelbert and Platinum;

    d. Misrepresenting the items on the equipment and inventory list;

    e. Using Platinum resources to build Zero Point;

    f. Stealing Platinum's customer information;

    g. Stealing Platinum's intellectual property; and

    h. Telling customers false statements about Platinum;

82. David knew the representations he made were false when made them, as David had actual knowledge of his previous conduct, the equipment and inventory list, his future plans, and knowledge that Nelbert was unaware of all of this hidden information.

83. Nelbert reasonably relied on David's representations and omissions because David made appeals to Nelbert as a brother and Christian, David had more knowledge of the conduct that had occurred in Tennessee and equipment and inventory in Tennessee as Platinum's Manager for the Tennessee-Kentucky region, and David's concealment of the truth and his own misrepresentations.

84. David's misrepresentations and omissions caused Nelbert's reasonable reliance as Nelbert would not have signed the Signed Document but for reliance on David's conduct and misrepresentations.

85. As a direct and proximate result of David's misrepresentations and omissions and Nelbert's reliance on the same, Nelbert suffered damages, including, but not limited to lost profits, equipment, tools, employees, profits, and the cost of replacing the losses, and attorneys' fees and court costs for which it seeks recovery, as well as punitive damages.

### COUNT 3: FRAUD IN THE INDUCEMENT

86. Nelbert reasserts and realleges the allegations elsewhere as if fully set forth herein.

87. In the time leading up to the signing of the Signed Document, David engaged in intentional misrepresentations, concealments, and omissions of material facts relating to his actions, and Platinum's property, equipment, and inventory with the intent to induce Nelbert to sign the Signed Document.

88. Nelbert reasonably relied on David's intentional misrepresentations, concealments, and omissions of material facts.

89. As a direct and proximate result of David's misrepresentations and omissions and Nelbert's reliance on the same, Nelbert suffered damages, including, but not limited to lost profits, equipment, tools, employees, profits, and the cost of replacing the losses, and attorneys' fees and court costs for which it seeks recovery, as well as punitive damages.

### COUNT 4: FRAUDULENT CONCEALMENT / CONSTRUCTIVE FRAUD

90. Nelbert reasserts and realleges the allegations elsewhere as if fully set forth herein.

91. David had a legal or equitable duty to disclose information respecting the subject matter of the Signed Document that materially affects a correct view of it.

92. David intentionally did not disclose to Nelbert facts about his previous, active, and future plans of diverting Platinum's employees and customers and misappropriating Platinum's data prior to Nelbert signing the Signed Document.

NSH 2622776.1

93. By omitting information material to the subject matter of the Signed Document, David concealed material information that would have caused Nelbert to not sign the Signed Document.

94. David's conduct has a tendency to deceive others, to violate public policy, violate private confidences, and injure public interests.

95. David, through his misrepresentations, omissions, and concealments, violated the principles and duties of good faith and fair dealing.

96. Nelbert's reliance on David's misrepresentations, omissions, and concealments, is reasonably expected under the circumstances.

97. David violated his legal and equitable duties with fraudulent intent by acts and omissions of facts related to the signing of the Signed Document

98. As a direct and proximate result of David's misrepresentations and omissions and Nelbert's reliance on the same, Nelbert suffered damages, including, but not limited to lost profits, equipment, tools, employees, profits, and the cost of replacing the losses, and attorneys' fees and court costs for which it seeks recovery, as well as punitive damages.

## **COUNT 5: BREACH OF CONTRACT**

99. Nelbert reasserts and realleges the allegations elsewhere as if fully set forth herein.

100. Nelbert asserts this Count in the alternative to his unequivocal and outright denial of any enforceable contract between he and David and only in the event that this Court finds the Signed Document is an enforceable agreement.

101. In the Signed Document, David was obligated to, among other things:

a. Disclose "any passwords and data pertaining to Platinum Programming and Diagnostics, LLC that he has knowledge of . . . as needed through the separation process."

b. "[B]e available at any time to answer all security-related questions that may arise after separation."

102. David breached his explicit obligations in the Document by not disclosing accurate and current passwords that actually provided Nelbert access to the accounts protected by the passwords.

103. David actively has, and current still is, prohibiting and preventing Platinum's access to accounts, including its business account with Google and the domain platprodiag.com.

104. David did not relinquish control of his access to the accounts protected by the passwords and data that he did not disclose.

105. Upon balancing Platinum's financial accounts, it was discovered that David owed Platinum money, but never paid the amounts owed.

106. David has not answered Nelbert's questions about the security-related breach of Platinum's data systems that occurred when David stole Platinum's client data.

107. David intentionally created a security and data problem through his theft of Platinum's data, which he did not answer, disclose, nor work in good faith to remedy.

108. David violated the implied covenant of good faith and fair dealing through his conduct as alleged herein.

109. David breached his explicit and implicit obligations prior to any alleged breach by Nelbert.

110. David's breaches are the direct and proximate cause of damages to Nelbert, including, but not limited to, attorneys' fees, court costs, lost profits, lost potential profits, and expenses related to locating and developing new websites, domains, technology, data, software, and securing it.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Counter-Plaintiff Nelbert prays for the following relief against Counter-Defendant David:

(1) That proper process issue upon Counter-Defendant and that he be required to appear and answer to this Counterclaim within the time provided by law;

(2) For judgment against Counter-Defendant in an amount to be proved at trial, in excess of $75,000, plus costs and attorneys' fees incurred, treble damages, punitive damages, and such other further damages to which Counter-Plaintiff may be entitled;

(3) For entry of permanent injunctive relief prohibiting Defendant, and all those acting in concert with or for him, from engaging in conduct that competes with Platinum, and from interfering with Platinum's employees, contractors, and existing prospective business relationships;

(4) For an order mandating David return the data misappropriated from Platinum's systems through Zero Point's agents and then deleted completely and permanently from all of Zero Point's systems, with certification of same under penalty of perjury;

(5) For an order disgorging any gains, profits or benefits Defendant received as a result of his disloyal, breaching, and tortious activities and surrendering the compensation Plaintiff paid to Defendant during the period of his breach;

NSH 2622776.1

(6) For an Order rescinding the Signed Document, to the extent it is deemed to be a valid and enforceable contract;

(7) For pre-judgment and post-judgment interest; and

(8) For such further and other relief as may be appropriate in accordance with the nature of this cause.

## JURY DEMAND

Plaintiff demands a jury trial on all claims and issues so triable.

Dated this the 31st day of March, 2023.

        Respectfully submitted,

        */s/ Stephen J. Zralek*
        Stephen J. Zralek BPR #18971)
        S. Chase Fann (BPR # 036794)
        SPENCER FANE LLP
        511 Union Street, Suite 1000
        Nashville, TN 37219
        Telephone: (615) 238-6300
        Fax: (615) 238-6301
        szralek@spencerfane.com
        cfann@spencerfane.com
        *Counsel for Defendants/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document on March 31, 2023, via ECF, on:

    Joe Weyant, Esq.
    1317 16th Avenue South
    P.O. Box 120656
    Nashville, TN 37212
    jweyantesq@gmail.com
    *Counsel for Defendants/Counter-Plaintiff*

        */s/ Stephen J. Zralek*