IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID KRAUSE, | ) |
|     Plaintiff/Counter-Defendant, | ) |
| v. | ) Case No. 3:23-cv-00266 |
| | ) Judge Aleta A. Trauger |
| NELBERT KRAUSE and PLATINUM PROGRAMMING AND DIAGNOSTICS, LLC, | ) |
|     Defendants/Counter-Plaintiffs, | ) |
| and | ) |
| PLATINUM PROGRAMMING AND DIAGNOSTICS, LLC, | ) |
|     Third-Party Plaintiff, | ) |
| v. | ) |
| ZERO POINT CALIBRATIONS, LLC, | ) |
|     Third-Party Defendant. | ) |

## MEMORANDUM

This case is a business dispute between brothers David and Nelbert Krause. They worked together for several years at Platinum Programming & Diagnostics, LLC ("Platinum"), but their relationship soured. David[1] has filed suit against Nelbert and Platinum, seeking a declaratory judgment that Nelbert violated their agreement to split Platinum's assets. Nelbert and Platinum counterclaimed, seeking their own declaratory judgment and other relief. Platinum brought third-

---

[1] For ease of reference, the court will uncharacteristically refer to the brothers by their first names only.

party claims against the competing company David formed, Zero Point Calibrations, LLC ("Zero Point").

Now before the court is Nelbert and Platinum's motion for partial summary judgment. (Doc. No. 40.) For the reasons set forth herein, the motion will be denied.

I.     **LEGAL STANDARDS**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.*

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying and citing specific portions of the record—including, *inter alia*, "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"—that it believes demonstrate the absence of a genuine dispute over material facts. Fed. R. Civ. P. 56(c)(1)(A); *Pittman v. Experian Info. Sols., Inc.*, 901

2

F.3d 619, 627–28 (6th Cir. 2018). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and the weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

**II.   FACTS AND PROCEDURAL HISTORY[2]**

Some cars are equipped with advanced safety features, which involve fine-tuned electronics. After car accidents, the electronics need to be checked and repaired, which auto body shops sometimes outsource. In 2016, Nelbert and David started Platinum to provide on-site electronics repair to auto body shops. Platinum is a Texas LLC that operates in Texas, Oklahoma, Louisiana, Kentucky, Montana, and Tennessee. Nelbert is the LLC's sole member. David has been an independent contractor and a full-time employee of Platinum, but whether he was a partner is contested.

The record reveals tension between the brothers. A lengthy negotiation for David to buy Platinum from Nelbert failed. So, in January 2022, while still a Platinum employee, David created Zero Point, which does the same work as Platinum. Through his new venture, David solicited and invoiced Platinum customers, used Platinum equipment, and hired Platinum employees. After discovering some of David's actions—what he discovered and when he did is disputed—on February 2, 2022, Nelbert fired David and other employees and took back some of his equipment. Nelbert then launched an investigation to determine the extent of Zero Point's alleged impropriety.

Days later, on February 6, the brothers had a phone call (which David secretly recorded) to discuss splitting Platinum's assets. The next day, February 7, 2022, the brothers signed a

---

[2] Unless otherwise stated, the facts are either undisputed or viewed in the light most favorable to David and Zero Point as the non-movants.

document ("Document") that purported to sever David from Platinum and divide the company's assets evenly between the brothers.

Since then, David argues, Nelbert has only partially performed on the contract. David sued Nelbert and Platinum in the Chancery Court for Montgomery County, Tennessee, seeking a declaratory judgment that the Document is a contract and to set out the parties' rights and obligations. (Doc. No. 1-2.)

Nelbert and Platinum removed the case to this court under 28 U.S.C. § 1332. (Doc. No. 1.) After removal, they filed an Answer and Counterclaim against David. (Doc. No. 9.) Platinum filed an Answer to the Complaint, Counterclaims against David, and a Third Party Complaint against Zero Point. (Doc. No. 10.) Nelbert claims that, since signing the Document, he discovered more of David's allegedly fraudulent and illegal actions and that, had he known about them on February 7, he would not have signed the Document. In the alternative, Nelbert argues that David breached the contract. Therefore, Nelbert argues, either no contract was formed, or his performance under it is excused.

David filed Answers to Nelbert and Platinum's Counterclaims. (Docs. Nos. 14, 15.) Zero Point filed an Answer to Platinum's Complaint. (Doc. No. 16.)

Nelbert and Platinum move for summary judgment on David's Complaint; Nelbert seeks summary judgment on counterclaims Counts 1–4[3] (declaratory judgment and various fraud claims) against David; Platinum seeks summary judgment on counterclaims Count 2 (breach of duty of loyalty) and Count 7 (tortious interference); and Platinum seeks summary judgment on its third-party claim Count 5 (tortious interference) against Zero Point. (Doc. No. 40, at 1–2.) David and

---

[3] Nelbert and Platinum note that the remaining counterclaim—breach of contract— would be moot if the court grants summary judgment on their counterclaim for a declaratory judgment that the document is not a contract. (Doc. No. 30, at 3 n.3.)

4

Zero Point filed a Response (Doc. No. 44), to which the movants have submitted a Reply (Doc. No. 62).

In support of their Motion for Partial Summary Judgment (Doc. No. 40), Nelbert and Platinum filed a Corrected Statement of Undisputed Material Facts ("SUMF"). (Doc. No. 41-1.) David and Zero Point filed a Response (Doc. 44-2), in which they dispute eleven of Nelbert and Platinum's purportedly undisputed facts. David and Platinum filed an Amended Statement of Additional and Disputed Material Facts (Doc. No. 58-1), to which Nelbert and Platinum filed a Reply (Doc. No. 63). The parties have jointly corrected the SUMF and the Response. (Doc. No. 60.) Nelbert and Platinum have also filed an Appendix, in which they argue that "none of these disputes of material fact is a genuine dispute." (Doc. No. 62-1, at 1.)

### III. DISCUSSION

There are eleven disputed facts. (Doc. No. 44-2 ¶¶ 8, 14, 15, 17, 19, 23, 25, 26, 27, 29; Doc. No. 60 ¶ 24.) The court is not persuaded by Nelbert and Platinum's argument that no genuine dispute exists. Because the claims on which Nelbert and Platinum seek summary judgment require the resolution of disputed facts, summary judgment is inappropriate.

Nelbert and Platinum ask this court to determine whether the Document is a valid contract or whether fraud at its formation renders it invalid. This issue is decisive for Nelbert and Platinum's motion for summary judgment on David's request for a declaratory judgment, for their counterclaim for their own declaratory judgment, and for fraud claims. But several facts required to answer this question are disputed.

For example, Nelbert and Platinum allege that David fraudulently induced Nelbert to sign the Document by misrepresenting that he had not retained any of Platinum's equipment or tools:

> David also misrepresented that he did not have any equipment or tools. David told Nelbert on February 6, 2022 [the day before signing the Document] that, he

5

personally did not have any Platinum tools. In reality, David kept $60,000 worth of equipment that he had obtained from Platinum, which he never disclosed to Nelbert.

(Doc. No. 40-2, at 10–11.) Nelbert asserts that, without this misrepresentation, he would not have signed the Document. (*Id.* at 11.) But it is contested not only what Nelbert knew at signing, but also whether David had this equipment when he signed the Document and who owned the equipment.

The equipment at issue is discarded auto parts that David took from cars he serviced while working for Platinum with permission from the auto body shops, and which he thereafter donated. (Doc. No. 44-2 ¶ 29; Doc. No. 45-1, at 314:21–25.) Nelbert and Platinum assert that "David kept $60,000 worth of equipment that he had obtained from Platinum, which he never disclosed to Nelbert." (Doc. No. 41-1 ¶ 29.) David and Zero Point dispute both that the equipment belonged to Platinum and that David had the equipment when he signed the Document. (Doc. No. 44-2 ¶ 29.) In reply, Nelbert and Platinum argue that, "although [David and Zero Point] dispute who owned the specific equipment[,] . . . it is undisputed they obtained this equipment while performing services on behalf of Platinum *and* that David never disclosed this[.]" (Doc. No. 62–1 ¶ 29.) But who owned the equipment and whether David had it at signing are essential to the fraudulent inducement claim: Nelbert and Platinum allege that "David misrepresented that he did not have any equipment or tools." (Doc. No. 40-2, at 10–11.) "In reality, David kept . . . equipment that he had obtained from Platinum[.]" (*Id.*)

Nelbert and Platinum further allege that "David concealed the extent of Platinum customers that he was servicing and calling on" (Doc. No. 40-2, at 12) and that, when he signed the Document, Nelbert "had only limited knowledge of [David's] misconduct." (Doc. No. 62, at 2.) This allegation is meant to support Nelbert and Platinum's request for summary judgment on David's claim for declaratory judgment, their own request for declaratory judgment, and their

6

fraudulent concealment claim. But whether Nelbert knew the extent to which David solicited Platinum customers is also disputed. Nelbert and Platinum offer several statements of undisputed facts in support, which David and Zero Point dispute. (Doc. No. 44-2 ¶¶ 14, 23, 26.)

On David's telling, Nelbert was supportive of his new venture, including by "allocating over 80% of Platinum's business connections." (Doc. No. 44-1.) While Nelbert and Platinum correctly point out that David and Zero Point do not specifically dispute their claim that Nelbert did not know, when signing the Document, that David had solicited *six* of his customers, (Doc. No. 62-1, ¶ 14), David and Zero Point respond that (a) David was fired, only several days before, for competing with Platinum; (b) Nelbert knew David had "billed out 'several'" invoices for Zero Point; and (c) Nelbert had launched an investigation into this conduct. (Doc. No. 44-2 ¶ 14.)

Moreover, for similar reasoning, David and Zero Point dispute Nelbert and Platinum's assertion that Nelbert would not have signed the Document if he had known about David's allegedly tortious interference. (Doc. No. 44-2 ¶ 26.) As David and Zero Point mention, Nelbert had launched an investigation before he signed the Document. (Doc. No. 44-1, at 16; Doc. No. 44-2 ¶ 14.) The court finds that a reasonable juror might conclude that, if full knowledge of David's actions would have affected Nelbert's decision to sign the Document, he might have waited for the investigation's conclusion before doing so.

Platinum also moves for summary judgment on its claims for breach of the duty of loyalty and tortious interference. In support of its claims for breach of loyalty and tortious interference, Platinum argues in consecutive sentences *both* that "David *concealed* his activity by removing his Platinum attire and not telling others that he was *clandestinely diverting* business opportunities from Platinum to Zero Point" *and* that "David *brazenly diverted* business opportunities to Zero Point." (Doc. No. 40-2, at 22 (emphasis added).) David and Zero Point dispute that David

7

concealed his activity or clandestinely diverted business. (Doc. No. 44-2 ¶ 8.) It is also disputed whether and to what extent Nelbert supported David's solicitation of customers. *See* (Doc. No. 44-1, at 19 ("Nelbert had already made the definitive decision to relinquish control of the Clarksville market to David[.]").) In other words, the resolution of these claims also depends on disputed facts.

## IV. CONCLUSION

For the reasons set forth herein, the motion for partially summary judgment will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge